UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>RAFAEL CORTES-OROPEZA,<br>Defendant. | CRIMINAL NO. 18-459 (PAD) |

## UNITED STATES' SENTENCING MEMORANDUM

### I.   INTRODUCTION

Defendant is a violent recidivist who is deaf to deterrence. Between October 1997 and August 1999, he murdered four people by shooting them multiple times. He killed one person in 1997; another person in 1998; and then two people in one month in 1999. He then fled to the continental United States to avoid prosecution. Instead of turning his life around in prison, he opted to traffic in drugs. After effectively serving about fifteen years out of a twenty-five-year sentence, he was released on July 6, 2015[1] and wasted no time in procuring the tools of his criminal trade. Shortly[2] after his release from prison, Defendant possessed the three firearms described in the Indictment, several magazines, and

---

1 ECF No. 115 at ¶¶ 47-48.
2 Defendant indicated that he bought the firearms after he was shot in 2016 (less than a year after his release from jail). *See* ECF No. 71-1 at p. 16.

1


rounds of ammunition.

After a trial where the United States presented overwhelming evidence, the jurors convicted Defendant on both counts: 1) prohibited person in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1) and 2) possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).

It is for defendants such as this one—the most violent and undeterrable criminals—that Congress passed ACCA. While the PSR notes Defendant's addiction to controlled substances, Defendant's long, frightening criminal history evidences another addiction: to violence and illegal weapons. The United States respectfully requests that the Court sentence Defendant to a guideline imprisonment term of *two hundred and forty months* with *five years* of supervised release to follow.

## II.   THE OFFENSE CONDUCT

On July 9, 2018, PRPD agents received information from a tip that an individual and his son were engaged in a drug war and that, as a result, this individual purchased a rifle and gave it to Defendant, his right-hand man, for safe-keeping. After investigating the tip, PRPD obtained search warrants against two residences.

On July 17, 2018, agents executed both search warrants. At one residence, agents found the individual's son asleep in a car and in possession of a revolver and drugs. Inside the residence, agents seized another revolver. At Defendant's residence, after agents explained the search procedure, Defendant disclosed that he possessed firearms and they

were in the bedroom, under a dresser drawer. During the search, the agents seized the following:

- Between the bottom drawer of a dresser and the floor, agents found two firearms: a Charter revolver and an M-12, "Uzi type" weapon with an obliterated serial number. ECF No. 98 at 53.

- Under the bed in the same bedroom, agents found a black and red bag containing a rifle magazine; two black pistol magazines; two nine-millimeter rounds of ammunition; two caliber .40 rounds of ammunition; and one 7.62 by 39 round of ammunition. Id. at 55.

- Under a bed in another bedroom, the police seized a loaded "black 7.62 by 39 caliber rifle". Id. at 55. The rifle was loaded with four rounds of ammunition in the magazine and a fifth round in the chamber. Id. at 56; ECF No. 99 at 15.

- In the closet of that same bedroom, the agent found one 9mm caliber round of ammunition. ECF No. 98 at 56.



3

After waiving his constitutional rights, Defendant explained that that, in 1997, he was arrested for two murders and posted bail. ECF No. 71-1 at 8. However, when he was charged with another two murders, he absconded and left for the continental United States. *Id.* After he was caught and extradited, he served his time. *Id.* During this interview, defendant indicated that he committed the murders as a vengeance for the death of his brother and that, if he had not killed them, he would have been killed because he was involved in "the mess". ECF No. 71-1 at 15.

Regarding the seized firearms, Defendant explained that he bought them from a friend to look after himself after he was released from jail because he had an old quarrels and had been shot in 2016. *See* ECF No. 71-1 at pp. 7 and 16; ECF No. 98 at 137, 141-142. Defendant further explained that he kept the firearms in the same place where the agents had seized them—the rifle under a bed and the .38 under the dresser drawer. He also admitted possession of the .380 pistol which he called a "mini Uzi". Id. at 139-142. Defendant's justification for his offenses is contradicted by the tip tied him to drug trafficking and lead to the seizure of the firearms. The tip was corroborated, at least partially, by the seizure of the black rifle that had been mentioned by the tipster.

## III. THE ARMED CAREER CRIMINAL ACT

The Armed Career Criminal Act ("ACCA") mandates a minimum sentence of fifteen years for qualifying defendants who violate § 922(g). 18 U.S.C. § 924(e)(1). A qualifying defendant is anyone who "has three previous convictions ... for a violent felony

4

or a serious drug offense, or both, committed on occasions different from one another." Id.

A "violent felony" is defined under the ACCA as "any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that— (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another". 18 U.S.C. § 922(e)(2)(B).

The First Circuit has already concluded that a conviction for Puerto Rico second-degree murder counts as a violent felony under the ACAA. See United States v. Baez-Martinez, 950 F.3d 119, 129 (1st Cir. 2020); see also Rojas-Tapia v. United States, Civil No.: 17-1759 (DRD) at *21, 2020 U.S. Dist. LEXIS 124452, *20-21 (D.P.R. July 13, 2020)("convictions for attempted murder and second-degree murder undoubtedly count as previous convictions" under ACCA). The statute analyzed in Baez Martinez is the same as defendant's offense of conviction (second degree murder under the 1974 Penal Code).[3]

---

3 Baez-Martinez was convicted in 1996 (*See* 950 F. 3d at 128) and Defendant was convicted in 2000 for offenses committed between 1997 and 1999. The statutes applicable to all of these murders were Articles 82 and 83 of the 1974 Penal Code, P.R. Laws Ann. tit. 33, §§ 4001-4002. (repealed June 18, 2004).

## IV.   GUIDELINE CALCULATIONS

Under the United States Sentencing Guidelines, Mr. Cortez-Oropeza has a base offense level of 33 pursuant to USSG 4B1.4(b)(3)(B) and a CHC of VI. Therefore, the applicable guidelines range is between two hundred thirty-five months and two hundred ninety-three months as correctly calculated in the pre-sentence investigation report. *See* ECF No. 115 at ¶ 77.

## V.   DEFENDANT'S CHARACTERISTICS

Defendant is a physically healthy 45-year-old man who has no history of formal or verifiable employment.[4]  *Id*. at p. 2 & ¶ 71.  He has a long record of substance abuse that includes marihuana, cocaine, and heroin. *Id*. at ¶¶ 67-68.  His familial network is limited: both parents and two siblings are deceased. *Id*. at ¶¶ 56-58. Defendant does not keep in contact with his remaining siblings. *Id*. It seems the only support that defendant would have

---

"Article 82 provid[ed] that "[m]urder is the killing of a human being with malice aforethought" and art. 83 establishes that "[a]ll murder which is perpetrated by means of poison, lying in wait or torture or any willful, deliberate, and premeditated killing or which is committed in the perpetration, or attempt to perpetrate, arson, rape, sodomy, robbery, burglary, kidnapping, destruction, mayhem or escape constitutes murder in the first degree, and all other kinds of murders are of the second degree." People v. Lucret Quiñones, 11 P.R. Offic. Trans. 904, 111 D.P.R. 716 (1981); see also Baez-Martinez, 950F. 3d at 128 ("Second-degree murder is any murder that is not first-degree murder, where first-degree murder includes any "willful, deliberate, and premeditated killing," plus a few other methods.")

4 He reported being self-employed as an assistant in construction projects. Id. at ¶ 71.

in keeping a law-abiding life after his release is his consensual partner.[5] However, she was unable to verify defendant's background information. *See* ECF No. 115 at ¶¶ 56-70. Therefore, she has very limited familiarity with defendant and his history. Moreover, she was present at the residence at the time of the search and seizure that lead to his arrest for the instant case. She was either oblivious to his offenses or unable to stop him from incurring in them.

## VI. DEFENDANT'S CRIMINAL HISTORY

Defendant's experience with the criminal justice system began when he was a minor. By the age of 17, he had multiple encounters with the law. ECF No. 115 at p. 8-10. While the official Court documents were destroyed in 2003, Defendant acknowledged two of these arrests and indicated he had served time in a juvenile correctional institution. *Id.* at ¶ 42.

At the age of 18, Defendant was sentenced to six months of imprisonment for causing property damages. *Id.* at ¶ 44. He was released on July 24, 1994. *Id.* Not a week after his release, on July 29, 1994, Defendant committed a burglary with the purpose of stealing a motor vehicle and a sound system. *Id.* at ¶ 45. He was sentenced to five years of imprisonment. *Id.* After his release, Defendant graduated to violent crimes and, in 1997,

---

[5] ECF No. 115 at ¶ 63.

he began his (known) murder spree:

1) On October 5, 1997, Defendant murdered Hector Rodriguez Rios by shooting him multiple times with a 9mm pistol. *See* ECF No. 112-2 and ECF No. 115 at ¶ 46.

2) On August 2, 1998, Defendant murdered Juan Molina Agosto shooting him multiple times with a 9mm pistol. *See* ECF No. 112-2 and ECF No. 115 at ¶ 46.

3) On August 1, 1999, Defendant murdered Axel W. Gonzalez Torres shooting him multiple times with a .45 caliber pistol. *See* ECF No. 112-2 and ECF No. 115 at ¶ 48.

4) On August 16, 1999, Defendant murdered Adan Rosario Tirado by shooting him multiple times with a firearm. *See* ECF No. 112-2 and ECF No. 115 at ¶ 47.

Certified copies of the charging documents along with the judgments for each of these murders were submitted at ECF No. 112. Along with these four murders, defendant was also convicted of related firearm offenses. ECF No. 115 at ¶¶ 46-48. He was sentenced to twenty-five years in prison but was released in 2015 after serving roughly fifteen years. *Id.*

While imprisoned for these four murders, Defendant was charged with possessing controlled substances with intent to distribute. Defendant pled guilty and the charges were reclassified to attempt/conspiracy. *Id.* at ¶ 50. He was given a "free pass" when he was sentenced to five years of imprisonment to be served *concurrently* with the sentences he

was already serving. *Id.*

Given Defendant's background, the circumstances of his arrest for the current federal offense should concern the Court. According to Defendant, his prior, multi-year murder spree was driven by the need to kill or be killed. ECF No. 71-1 at 15. When arrested with three firearms this time around, he again justified his actions by the need to protect himself from unspecified threats from the street. ECF No. 98 at 137, 141-142. Regardless of his more advanced age and the years spent in prison, Defendant simply has not learned to break the cycle of violence. For the safety of the community, a guideline sentence is warranted.

## V. RECIDIVISM

According to a study by the United States Sentencing Commission[6], firearms offenders recidivated at a higher rate than non-firearms offenders. This study also found:

- "Over two-thirds (68.1%) of firearms offenders were rearrested for a new crime during the eight-year follow-up period compared to less than half of non-firearms offenders (46.3%)".[7]

- "Firearms offenders recidivated more quickly than non-firearms offenders. Of the firearms offenders who recidivated, the median time from release to the first

---

6 *See* U.S. Sentencing Commission, *Recidivism Among Federal Firearms Offenders* (June 2019) available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf
7 *Id.* at p. 4.

recidivism event was 17 months. Comparatively, the median time from release to the first recidivism event for non-firearms offenders was 22 months."[8]

- "Firearms offenders recidivated at a higher rate than non-firearms offenders in every age group at the time of release from custody. *Firearms offenders recidivated at nearly twice the rate of nonfirearms offenders among those released after age 50* (39.3% compared to 20.6%)."[9]

- "A greater percentage of firearms offenders were rearrested for serious crimes than non-firearms offenders. Of the firearms offenders who recidivated, assault was the most serious new charge for 29.0 percent, followed by drug trafficking (13.5%) and public order crimes (12.6%)."[10]

- "*Firearms offenders appear to desist from criminal activity later in life than non-firearms offenders—firearms offenders continued to recidivate at a high rate until reaching age 50 at the time of release from prison. Even after age 50, firearms offenders recidivated at nearly double the rate of non-firearms offenders in the same age group*".[11]

Given the high rate of recidivism among firearm offenders, especially those released after the age of fifty, a guideline sentence of *two hundred and forty months* of imprisonment is adequate and necessary to protect the community from future offenses by Defendant.

---

8 *Id*.
9 *Id.* (emphasis added).
10 *Id*.
11 *Id*. at p. 48 (emphasis added).

## VI. CONCLUSION

Defendant's criminal history shows that his prior sentences have been extremely lenient. He received a sentence of only fifteen years after he pleaded guilty to four separate murders and the related firearm offenses. While he was serving that sentence, he was caught with drugs at the institution and was given a free pass when he was sentenced to a *concurrent* term of imprisonment. These sentences failed to motivate Defendant to live a law-abiding life. Instead, they seem to have fostered a sense of impunity. Moreover, there is an increased risk of recidivism among firearm offenders released after the age of fifty.

This Court should impose a sentence that sufficiently addresses Defendant's background, the nature and circumstances of the offense, the need to promote respect for the law and provide just punishment for the offense, and the need to protect the public from future crimes of the Defendant. *See* 18 U.S.C. § 3553(a). Given Defendant's extensive and violent criminal history (to include four murders for which he received a favorable sentence), his history of flight to avoid prosecution, and the fact that he continued incurring in criminal conduct while imprisoned (introducing drugs into jail in 2009) along with the amount of firearms seized, the presence of high capacity magazines, and the fact that one of the firearms had and obliterated serial number, a guideline sentence is warranted.

WHEREFORE, the United States of America respectfully requests that this Honorable Court sentence Defendant to a guideline imprisonment term of *two hundred and forty months* with *five years* of supervised release to follow.

11

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on February 11, 2021.

> W. STEPHEN MULDROW
> United States Attorney
>
> *S/ Jeanette M. Collazo-Ortiz*
> Assistant U.S. Attorney
> Torre Chardon, Suite 1201
> 350 Carlos Chardon St.
> San Juan, P.R.   00918
> Tel. (787) 766-5656; Fax (787) 772-3992
> e-mail: jeanette.collazo@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

> */s/ Jeanette M. Collazo-Ortiz*
> Assistant U.S. Attorney