# United States Court of Appeals
## For the First Circuit

No. 21-1209

UNITED STATES,

Appellee,

v.

RAFAEL CORTEZ-OROPEZA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Gelpí, Circuit Judges.

Steven A. Feldman and Feldman & Feldman on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and David C. Bornstein, Assistant United States Attorney, on brief for appellee.

July 13, 2022

**LYNCH**, **Circuit Judge**.  Rafael Cortez-Oropeza seeks to have this court set aside his convictions from his March 2020 jury trial for unlawfully possessing firearms and ammunition as a convicted felon, 18 U.S.C. § 922(g)(1), and for unlawfully possessing a firearm with an obliterated serial number, id. § 922(k).  The argument on which this appeal turns is that the district court abused its discretion when it qualified Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Israel Valle as an expert under Fed. R. Evid. 702 on whether the firearms and ammunition charged in the operative indictment had traveled in interstate commerce.  We affirm.

I.

On July 17, 2018, law enforcement recovered from Cortez-Oropeza's home in Puerto Rico one Cobray M-12 .380 caliber machinegun with an obliterated serial number; one Charter Arms .38 caliber revolver; one 7.62x39 mm rifle; assorted rounds of 9 mm, .40-caliber, and 7.62 mm ammunition; and one rifle and two pistol magazines.  The rifle was loaded with four cartridges in its magazine and one in its chamber.

After he was arrested, Cortez-Oropeza signed a written confession stating:

> I[,] Rafael Cortez[-]Oropeza[,] take all the
> blame for everything they have seized at my
> house, the rifle, and the submachine gun, and
> the .38 were seized at my house.  They are all
> mine, and my wife is innocent in this whole

>            situation that is happening to me. . . .  I am
>            the only one to blame.

The confession is not at issue.

On December 17, 2019, the grand jury returned a second superseding indictment, charging Cortez-Oropeza with unlawful possession of firearms and ammunition as a convicted felon and unlawful possession of a firearm with an obliterated serial number. See 18 U.S.C. §§ 922(g)(1), (k), 924(a), (e).  All three firearms and the rounds of ammunition recovered by law enforcement were included in the indictment, allegedly "having been shipped and transported in interstate and foreign commerce."  Cortez-Oropeza pleaded not guilty and proceeded to trial.  The parties stipulated that Cortez-Oropeza "knew that he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year."

In conformance with its obligations under Fed. R. Crim. P. 16, the government had notified Cortez-Oropeza that it would call ATF Special Agent Valle as a "nexus expert" to testify, inter alia, about "the analysis and methodology used to examine the firearms and ammunition seized" and "the origin of [Cortez-Oropeza's] firearms and ammunition and their interstate or foreign nexus," i.e., whether the firearms and ammunition had traveled in interstate commerce.[1]  The notice stated that Special Agent Valle's

---

[1] Under 18 U.S.C. § 922(g), the government must prove, inter alia, the defendant possessed a "firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

testimony "will be based on his specialized training and experience in the examination and analysis of firearms and ammunition and the examination performed by him on the firearms and ammunition seized in this case."  Defense counsel did not file a motion in limine to exclude such testimony.

At trial before the jury, the government called Special Agent Valle to testify as to his background and training before it moved to qualify him as an expert.  On direct examination, Special Agent Valle testified that he had been an ATF agent for two years and, at the time, was certified by the ATF as an interstate nexus agent.  Interstate nexus agents are tasked with determining where firearms are manufactured or assembled in order "to determine whether the firearm, if possessed in Puerto Rico, . . . traveled in interstate or foreign commerce."  Special Agent Valle had taken and passed multiple exams for the position and received specialized training, including a one-week in-person class and additional online trainings.  Special Agent Valle further testified that, after receiving his certificate, he had examined more than ten firearms unrelated to this case to determine where they were made.

---

Similarly, for a section 922(k) prosecution, the government must prove the firearm "has, at any time, been shipped or transported in interstate or foreign commerce."  This has been called the "interstate nexus" element.  See, e.g., United States v. Corey, 207 F.3d 84, 86, 88 (1st Cir. 2000).

The government then moved to qualify Special Agent Valle as an expert witness on firearms and the interstate nexus elements of the crimes charged. Defense counsel objected, seeking "to voir dire the witness before he is qualified or not as an expert."

The district court permitted defense counsel to conduct voir dire of Special Agent Valle. During voir dire, Special Agent Valle testified that he has been in law enforcement for well over a decade and that this was his first time testifying as an expert. He also testified as to his training to become an interstate nexus agent, which included instruction on and practice with inspecting firearms for specific markings and proofmarks and searching those marks on a database owned and maintained by the ATF.

The government, following this voir dire, renewed its motion to qualify Special Agent Valle as an expert. Defense counsel again objected, arguing that the witness had not testified to the specifics of his training and that "he will essentially be almost a lay witness." The district court stated:

> Let me tell you what I think this witness has to be an expert on. He has to be an expert not on firearms generally but on how to determine whether this firearm has moved in interstate commerce. And I would like to hear some questions, either from the government or from the defense, establishing that he -- how he knows about determining that, what training he has on that issue, before I rule on whether he's an expert on that or not.

The government questioned Special Agent Valle further about his in-person and other training. The agent stated that he first had to prove his basic knowledge of firearms by passing an exam. After that, he was instructed "on how to find markings, proofmarks, make and models, [and the] caliber of firearms," focusing on the frame of the weapon. He also was trained to consult the ATF "database, books, [his] knowledge[ and] experience, and sometimes . . . another senior special agent" to determine, based on the firearm's marks, where a firearm was manufactured. Special Agent Valle stated that he spent most of his in-person training practicing locating the manufacturing origin of firearms. He inspected more than thirty firearms in that time and passed another exam before he was certified as an interstate nexus agent. He continued to receive online trainings "every couple of months" or so.

Defense counsel conducted further voir dire of Special Agent Valle, during which the agent stated that he did not know the specific quality control for adding manufacturers' markings and proofmarks to the ATF database, did not memorize what each and every marking means, had not published anything within his field of gun markings identification or joined any organizations, and did not remember his exam scores, although he did know he received passing grades. Special Agent Valle further testified to his reliance on various reference materials when determining whether

a firearm has traveled in interstate commerce, including the Blue Book for Gun Values and "Ammo Guide" or "[s]omething similar to that," although he did not remember the publishers or authors of the books.

Defense counsel objected under Fed. R. Evid. 702(a) to qualifying Special Agent Valle as an expert, arguing that "our concern is he will not, with his very limited experience and knowledge, be able to help this jury with anything." The district court overruled the objection and, based on the agent's testimony, granted the government's motion to qualify Special Agent Valle as an expert. The court immediately instructed the jury: "I will allow the witness to testify as an expert. Like any other witness, you [the jurors] are the ones that determine the weight that will be given to this witness."

Special Agent Valle, thereafter, testified to the manufacturing origin of Cortez-Oropeza's firearms and ammunition, concluding that, based on his inspection of the contraband, his research on the ATF database, and his own knowledge, each was manufactured outside of Puerto Rico. He stated that the machinegun was manufactured in Buffalo, New York because the serial number had a "dash 12" and started with "0000001 up to 0011565": the unobliterated part of "[t]his one is 12-0009." Special Agent Valle concluded that the Charter Arms revolver was manufactured in Connecticut based on the markings stating, "Charter Arms," and his

research on the ATF database that all Charter Arms revolvers are manufactured in Connecticut. The rifle, Special Agent Valle testified, was manufactured in China, as there was a proofmark of a triangle with a 26 inside. And the ammunition was manufactured either in Connecticut or Arkansas and in Russia. He observed two types of the ammunition seized had an "R dot P[,] [a]nd that's a Remmington [sic] ammunition. . . . [T]hey manufacture ammunition in Arkansas and Connecticut." The other type was "a TulAmmo, which they manufacture ammunition in Russia." He also testified to his general knowledge that neither firearms nor ammunition are manufactured in Puerto Rico.

Defense counsel cross-examined Special Agent Valle on when he inspected the firearms (a month before trial), whether he prepared a report of his inspections (he did not because a former interstate nexus agent had),[2] whether another agent verified his conclusions (none had), whether he confirmed the serial numbers of the firearms with the manufacturers (he did not because that is outside the scope of his duties), and whether there are unlicensed armorers and gunsmiths in Puerto Rico that modify and assemble firearms and ammunition (the agent could not answer due to

---

[2] Special Agent Valle's conclusions as to the out-of-state manufacturing origins of the firearms and ammunition matched those of the former interstate nexus agent's for all but the rifle, for which the former agent stated he could not determine the origin.

potentially confidential information; he did state on redirect that gunpowder is not produced in Puerto Rico).

The jury found Cortez-Oropeza guilty of both counts of unlawful firearm possession, for which he was convicted and sentenced.

His appeal contends that the district court abused its discretion in qualifying Special Agent Valle as an expert under Fed. R. Evid. 702(a).

## II.

Our review of a district court's decision to admit, over objection, expert-witness testimony is for clear abuse of discretion. United States v. Corey, 207 F.3d 84, 88 (1st Cir. 2000). We must affirm, "unless the ruling at issue was predicated on an incorrect legal standard or we reach a 'definite and firm conviction that the court made a clear error of judgment.'" Id. (quoting United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1995)).[3] There is no argument that the district court applied an incorrect legal standard.[4]

---

[3] Cortez-Oropeza's contention that this court will apply a less deferential standard of review where the government "relies solely on an expert to establish the interstate jurisdictional element of a felon-in-possession charge" is unsupported and contradicted by the controlling caselaw in this circuit. See, e.g., Corey, 207 F.3d at 88-89.

[4] Appellate counsel is different from Cortez-Oropeza's trial counsel.

Fed. R. Evid. 702 provides that a witness can be qualified as an expert "by knowledge, skill, experience, training, or education" (emphasis added). Under Rule 702(a), the witness's testimony must concern his "scientific, technical, or other specialized knowledge" and "help the trier of fact to understand the evidence or to determine a fact in issue."

The district court did not abuse its discretion in ruling that Special Agent Valle was qualified to testify as an expert on the interstate travel of Cortez-Oropeza's firearms and ammunition. See Santos v. Posadas de P.R. Assocs., Inc., 452 F.3d 59, 64 (1st Cir. 2006) ("The test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702 . . . ." (emphasis added)). Cortez-Oropeza's arguments to the contrary lack merit.

We reject Cortez-Oropeza's argument that Special Agent Valle's testimony was inadmissible under Fed. R. Evid. 702(a) because it did not concern specialized knowledge. This court repeatedly has rejected similar arguments and has observed that "[e]xpert testimony is appropriate to prove the interstate nexus element." United States v. Luna, 649 F.3d 91, 105 (1st Cir. 2011); see also Corey, 207 F.3d at 88-89; United States v. Cormier, 468 F.3d 63, 72 (1st Cir. 2006) ("[T]he 'interstate nexus' element of § 922(g) constitute[s] specialized knowledge for which expert

testimony would be appropriate."). Further, we have held that experts on the interstate travel of firearms reasonably may base their testimony on their personal inspection of the firearms, together with ATF manufacturing records, technical manuals, and reference materials, just as Special Agent Valle did here. See Corey, 207 F.3d at 89 n.7; see also Cormier, 468 F.3d at 73 ("[The expert] not only consulted publicly available records in making his conclusions about the manufacturing origin of the weapons, but he also looked to conversations with manufacturers and research texts, and he inspected one of the weapons."); United States v. Allen, 190 F. App'x 785, 787 (11th Cir. 2006) (per curiam) (unpublished) ("[The expert] based his opinion [of interstate nexus] on the markings on the gun, his personal knowledge concerning the manufacture and distribution of guns, and his review of industry-wide publications, including The Blue Book of Gun Values."); United States v. Ware, 914 F.2d 997, 1003 (7th Cir. 1990) ("[E]xperts in the field of firearms identification rely on [markings on the firearm, ATF publications and lists, and firearms trade books and other reference materials] with regard to the issue of interstate transportation of firearms and such reliance is reasonable."). Special Agent Valle's expert testimony that Cortez-Oropeza's firearms and ammunition were manufactured outside of Puerto Rico clearly would help a jury in its consideration of the interstate nexus element.

Cortez-Oropeza, acting pro se, makes two additional arguments in his Fed. R. App. P. 28(j) letter; neither saves his appeal. His first argument, purporting to rely on Rehaif v. United States, 139 S. Ct. 2191 (2019), depends entirely on his assertion that the government failed to have admissible testimony that guns traveled in interstate commerce. Because we have rejected his counseled claim that the expert testimony should have been excluded, necessarily this pro se claim also must fail.

As to Cortez-Oropeza's second pro se argument that "he does not categorically meet the definition of the statutory authority 18 U.S.C. § 924(e) [ARMED CAREER OFFENDER] because his only prior countable offenses are approximately 20 years old, pursuant to [U.S. Sent'g Guidelines Manual] § 4A1.2(e)" (first alteration in original), even if not waived for lack of development, the argument is wrong. The portion of the sentencing guidelines that Cortez-Oropeza cites provides that prior offenses are to be counted if they "resulted in the defendant being incarcerated during any part of such fifteen-year period" prior to the defendant's "commencement of the instant offense." U.S. Sent'g Guidelines Manual § 4A1.2(e) (U.S. Sent'g Comm'n 2021). While Cortez-Oropeza's convictions for prior crimes predate the commission of his instant offense by over fifteen years, he was incarcerated for those offenses within fifteen years of his commencing the instant offense.

III.

<u>Affirmed</u>.